Ruth S. Steele Director, General Education Division Four State Capitol Mall Little Rock, AR 72201-1071
Dear Ms. Steele:
This is in response to your request for an opinion regarding the extent of public access to information relating to results of the Arkansas Educational Skills Assessment (AESA) test. The Department of Education (Department) has been requested to produce for public inspection certain demographic information that relates to teachers who took the AESA. Specifically, you ask two questions:
 1. Does A.C.A. 6-17-603 prohibit the release of the requested information?
 2. If A.C.A. 6-17-603 (1987) does not prevent the Department from releasing the information requested:
(a) What information must be released?
 (b) What is the Department's obligation under the Freedom of Information Act to create the information requested?
Arkansas Code Annotated 6-17-603 provides an exemption from the Arkansas Freedom of Information Act for the results of the AESA test. Subsections (a) and (b) of 6-17-603 state:
 (a) Scores from the tests required under the provisions of this subchapter shall not be disclosed but shall be retained by the Department of Education as confidential records not subject to the Freedom of Information Act or any other act which would require the disclosure thereof. However, the Department shall provide each certified personnel with that person's test score and the grader's analysis of the writing portion of the tests.
 (b) The Department of Education shall transmit to the Governor and the Joint Interim Committee on Education a composite report indicating by county the number of persons who failed the tests and the number of persons who passed the test.
The above provisions clearly state that the test scores of individuals are not to be reported and that only a pass/fail ratio for each county is to be forwarded to the Governor and General Assembly. Evidence of just how strongly the legislature intended to protect the confidentiality of the test scores can be found in the emergency clause of the Act from which this statute arises. Section 4 of Act 693 of 1985 states in pertinent part:
 It is hereby found and determined by the General Assembly that the test required by Act 76 of the First Extraordinary Session of 1983 will be taken prior to the adjournment of this Regular Session; that the test scores should be held confidential; that this Act provides that such test scores shall be confidential and therefore should be given immediate effect.
It is evident, then, that the legislative intent of this Code provision is to prevent any disclosure as to how a particular educator performed on the exam. The issue thus turns on whether an individual's performance can be determined by releasing the demographic information requested.
If releasing the pass/fail rate by county, as required by6-17-603(b), leads to the identification of an individual, then legislative intent with respect to maintaining the confidentiality of each individual's performance will have been breached. I believe that the likelihood of such an event is high in this instance.
By way of example, assume that the demographic information requested indicates that in a sparsely populated county only four white, male teachers took the test, and all four failed. It is then possible to identify the individual teachers, contrary to the intent expressed under A.C.A. 6-17-603.
Since the release of the information requested is prohibited, I need not address your second question.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.